FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAR 0 2 2026

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

Todd Blanche
Deputy Attorney General of the United States
Caitlin Baunsgard
Assistant United States Attorney
Eastern District of Washington
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 2:25-CR-0095-RLP-3 |
| | ) | |
| v. | ) | |
| | ) | PLEA AGREEMENT |
| AUSTIN DESHANE VALENTINE, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff United States of America, by and through Caitlin Baunsgard, Assistant United States Attorney for the Eastern District of Washington, and Defendant, AUSTIN DESHANE VALENTINE ("Defendant"), both individually and by and through Defendant's counsel, Dustin Marcello, agree to the following Plea Agreement:

1. <u>Guilty Plea and Maximum Statutory Penalties</u>:

Defendant agrees to enter a plea of guilty to the Information charging Defendant with Misprision of a Felony, in violation of 18 U.S.C. § 4, a Class E felony.

Defendant understands the following potential penalties apply:

      a.     a term of imprisonment of not more than 3 years;

      b.     a term of supervised release of not more than 1 year;

      c.     a fine of up to $250,000; and

PLEA AGREEMENT - 1

d.   a $100 special penalty assessment.

2.   Supervised Release:

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

a.   5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

b.   3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

c.   2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3.   Potential Immigration Consequences of Guilty Plea:

If Defendant is not a citizen of the United States, Defendant understands the following:

a.   pleading guilty in this case may have immigration consequences;

b.   a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c.   removal from the United States and other immigration consequences are the subject of separate proceedings; and

PLEA AGREEMENT - 2

d. no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

4. The Court is Not a Party to the Plea Agreement:

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a. sentencing is a matter solely within the discretion of the Court;

b. the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c. the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d. the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e. the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f. the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

5. Waiver of Constitutional Rights:

Defendant understands that by entering this plea of guilty Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

a. The right to a jury trial;

PLEA AGREEMENT - 3

b. The right to see, hear and question the witnesses;

c. The right to remain silent at trial;

d. The right to testify at trial; and

e. The right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6. Elements of the Offense:

The United States and Defendant agree that to convict the Defendant of Misprision of a Felony, in violation of 18 U.S.C. § 4, the United States would have to prove beyond a reasonable doubt the following elements:

First, on or about May 17, 2025, in the Eastern District of Washington, a federal felony was committed, to wit: Robbery Affecting Commerce, as charged in Count 4 of the Superseding Indictment;

Second, Defendant had knowledge of the commission of that felony;

Third, Defendant failed to notify a federal authority as soon as possible; and

Fourth, Defendant did an affirmative act to conceal the offense.

7. Statement of Facts and Stipulation:

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a

PLEA AGREEMENT - 4

reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement. The parties further agree and stipulate that this factual basis is simply a summary to support the plea, it does not contain all facts which could be proven by the United States.

In May 2025, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and the Moses Lake Police Department's ("MLPD") Street Crimes Unit was conducting a crime reduction emphasis in the greater Grant County area. A confidential informant ("CI") advised that Roman GONZALEZ ("GONZALEZ") was a small-time drug dealer and sold firearms.

On May 15, 2025, a controlled purchase of a firearm was attempted from GONZALEZ. Prior to the controlled buy, GONZALEZ and the CI communicated about the purchase of a firearm and GONZALEZ agreed to sell the CI a .38 caliber revolver for $450.00 at GONZALEZ' Moses Lake, Washington area residence at a particular time. Prior to the time for the transaction, GONZALEZ contacted the CI and changed the meeting location to the Moses Lake area residence of Austin VALENTINE ("VALENTINE") as GONZALEZ advised that Jackson BROWN ("BROWN"), to whom the CI owed a $30.00 drug debt, was aware that the CI would be coming to GONZALEZ' residence. The CI agreed to the location change and was transported to VALENTINE's residence. The CI was equipped with an audio recording device and $600 in pre-recorded buy funds to complete the transaction.

Once inside VALENTINE's residence, the CI met with GONZALEZ in the bathroom of the master bedroom as directed by VALENTINE, and GONZALEZ sold the CI a firearm in exchange for $350.00. While GONZALEZ and the CI were completing the transaction, VALENTINE called BROWN and told BROWN of the

PLEA AGREEMENT - 5

CI's presence and to enter his (VALENTINE's) residence through the back door, and that GONZALEZ and the CI were in the bathroom of the residence.

While the CI was in the residence completing the transaction, surveillance units saw a green Land Rover associated to BROWN arrive at the residence. BROWN then made his way into VALENTINE's residence and said something to the effect of "drop pockets motherfucker", which was followed by shouting. BROWN then left the residence, and after a brief elude, stopped for law enforcement. A search warrant was executed on the Land Rover, and MLPD located methamphetamine as well as $200 of the pre-recorded buy money.

GONZALEZ was arrested on May 17, 2025 in possession of a small amount of methamphetamine. GONZALEZ provided a post-*Miranda* statement and admitted he knew the CI was robbed over a drug debt. GONZALEZ admitted he knew the CI wanted to buy a gun, but said it was for $400. GONZALEZ also stated that BROWN was armed with a firearm during the robbery. GONZALEZ was asked if he knew how much money was stolen from the CI and GONZALEZ stated he believed it was about $250. Of note, the CI had $600 in pre-recorded buy funds and spent $350 on the gun, so the CI would have had $250 left.

GONZALEZ admitted owning a gun for his own protection and carried a .357 or .38 revolver. GONZALEZ admitted to being a drug dealer and selling a little bit of methamphetamine. GONZALEZ agreed to surrender his firearm and signed a written consent to that effect. GONZALEZ was taken back to his residence and GONZALEZ retrieved his firearm, which was in a locked backpack in a safe. GONZALEZ used the keys on the lanyard that was on his person when he was arrested to unlock the locks on the backpack.

That same day, VALENTINE was arrested and provided a post-*Miranda* statement. VALENTINE stated the CI went to his house to purchase a firearm from GONZALEZ and confirmed BROWN robbed the CI. VALENTINE stated BROWN went to go talk to the CI and GONZALEZ who were in the bathroom and when they

PLEA AGREEMENT - 6

all came out it was over. VALENTINE stated he heard the CI say, "I swear that's all I got, that's all I got" and BROWN left the residence after. VALENTINE stated he observed the CI arguing with GONZALEZ as the CI stated he wanted their money back. VALENTINE stated the CI owed BROWN $400. When asked how much money BROWN paid GONZALEZ for luring the CI to his house, VALENTINE stated he believed BROWN paid GONZALEZ approximately $150 and that was the money GONZALEZ and the CI were arguing over. VALENTINE witnessed GONZALEZ tell the CI "I don't know what to tell you bro, it's a done deal". VALENTINE advised the CI probably owed BROWN money over drugs. VALENTINE confirmed GONZALEZ used the firearm to lure the CI to get robbed. VALENTINE admitted GONZALEZ gave him (VALENTINE) $50 of the money stolen from the CI because his house was used to rob the CI. VALENTINE admitted he accepted the $50 from GONZALEZ and had already spent it.

Defendant stipulates and agrees the crime of Conspiracy to Commit Robbery Affecting Commerce was committed and he had knowledge of the commission of that crime. Defendant further stipulates and agrees he did not notify authorities to this crime and did an affirmative act to conceal the offense, to wit: allowing GONZALEZ and BROWN to utilize his residence to commit the crime.

8.     The United States Agrees:

a.     *Not to File Additional Charges*:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing or attempts to, or does, obstruct justice.

PLEA AGREEMENT - 7

b. *Dismissal of Remaining Charges*:

The United States agrees to dismiss the Superseding Indictment against Defendant at the time of sentencing unless Defendant breaches this Plea Agreement before sentencing or attempts to, or does, obstruct justice.

9. United States Sentencing Guideline Calculations:

Defendant understands and acknowledges that the United States Sentencing Guidelines ("USSG" or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations:

a. *Base Offense Level and Relevant Conduct*:

The United States and Defendant agree to recommend the base offense level for the underlying offense is 25 as it was robbery where a firearm was brandished, which was reasonably foreseeable to Defendant[1]. *See* USSG §§2X4.1(a) and cmt 1; 2B3.1(a), (b)(2)(C).

The United States and Defendant agree to recommend Defendant's base offense level is 16, which is 9 levels less than the base offense level for the underlying offense.

b. *Specific Offense Characteristics*:

There are no specific offense characteristics for this guideline. *See generally* USSG §2X4.1.

c. *Role Adjustments*:

There is no role adjustment for this guideline. *See* USSG §2X4.1(a), cmt. 2.

d. *Acceptance of Responsibility*:

The United States will recommend that Defendant receive a three-level

---

[1] The CI stated the firearm he/she purchased from GONZALEZ was also stolen during the robbery. However, the parties agree to recommend that was not reasonably foreseeable to Defendant as robbery was over a drug debt and it does not appear the "object of the offense" was the firearm; therefore, the parties are not recommending the additional 1-point enhancement. *See* USSG §2B1.3(b)(6).

PLEA AGREEMENT - 8

downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a), (b), if Defendant does the following:

    i. accepts this Plea Agreement;

    ii. enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii. demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

    iv. provides complete and accurate information during the sentencing process; and

    v. does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is commits, is charged with, or convicted of, any criminal offense to include obstruction of justice, or if Defendant tests positive for any controlled substance.

    e. *Agreements Regarding Representations to the Court*:

The United States has a duty of candor to the tribunal. If the United States and Defendant do not agree on the appropriate length of incarceration, the appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United States reserves the right to respond to any and all arguments made by Defendant, on any bases the United States deems appropriate, at all stages of this criminal case.

Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

Regarding all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

PLEA AGREEMENT - 9

i. The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

ii. The United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant;

iii. The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

iv. The United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the Presentence Investigation Report;

v. The United States and Defendant may each respond to any arguments presented by the other;

vi. In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis, including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

vii. In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by

PLEA AGREEMENT - 10

the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

viii. The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

ix. Defendant may make any sentencing arguments consistent with this Plea Agreement Defendant deems appropriate.

f. *No Other Agreements*:

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

g. *Criminal History*:

The United States and Defendant have made no agreement and make no representations as to Defendant's Criminal History Category, which shall be determined by the Court at sentencing after the Presentence Investigative Report is completed.

PLEA AGREEMENT - 11

10.     Length of Incarceration[2]:

The United States and Defendant agree to recommend at term of incarceration of 36 months.

11.     Supervised Release:

The United States and Defendant each agree to recommend 3 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

      a.     The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control;

---

[2] At the time of Defendant's original sentencing in the District Court, the United States agrees to make a sentencing recommendation to the Court that is consistent with this Plea Agreement. The United States' agreement to make such a recommendation is limited exclusively to the time of Defendant's original sentencing in the District Court. The United States' agreement to make such a recommendation does not prohibit or limit in any way the United States' ability to argue for or against any future sentencing modification that takes place after Defendant's original sentencing in the District Court, whether that modification consists of an amendment to the Guidelines, a change to a statutory minimum or maximum sentence, any form of compassionate release, any violation of Supervised Release, or any other modification that is known or unknown to the parties at the time of Defendant's original criminal sentencing. In this Plea Agreement, the United States makes no promises or representations about what positions the United States will take or recommendations the United States will make in any proceeding that occurs after Defendant's original sentencing in the District Court.

PLEA AGREEMENT - 12

b. Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs;

c. Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to the Defendant's ability; and

d. Defendant shall have no contact with any victim or witness identified in this case.

12. <u>Mandatory Special Penalty Assessment</u>:

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013.

13. <u>Criminal Fine</u>:

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

14. <u>Payments While Incarcerated</u>:

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

15. <u>Additional Violations of Law Can Void Plea Agreement</u>:

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or

PLEA AGREEMENT - 13

modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense, tests positive for any controlled substance, and/or obstructs, or attempts to obstruct, justice.

16. <u>Waiver of Appeal and Collateral Attack Rights</u>:

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court. Defendant expressly waives his right to appeal his conviction and/or sentence.

Defendant also expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Defendant expressly waives Defendant's right, even if otherwise authorized by the United States Constitution or federal law, to challenge in the district court, to move to withdraw Defendant's plea based on, or to appeal the validity and/or entry of, any and all charging instruments, any and all plea agreements, any and all pleadings, any and all communications between any and all defense counsel and any and all Assistant United States Attorneys, and/or any and all guilty pleas in the above-captioned matter based on any and all arguments that the United States, the United States Attorney's Office for the Eastern District of Washington, the Deputy Attorney General, any and all First Assistant United States Attorneys for the Eastern District of Washington, any and all Criminal Chiefs for the United States Attorney's Office for the Eastern District of Washington, any and all Assistant United States Attorneys for the Eastern District of Washington, and/or any and all attorneys for the government, are in any way unauthorized to bring, seek, file, and/or resolve any and all aspects of the above-captioned matter, case, and/or charges.

PLEA AGREEMENT - 14

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

17. <u>Withdrawal or Vacatur of Defendant's Plea:</u>

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a.    this Plea Agreement shall become null and void;

    b.    the United States may prosecute Defendant on all available charges;

    c.    the United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

    d.    the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

PLEA AGREEMENT - 15

18.    Integration Clause:

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Todd Blanche
Deputy Attorney General

_____          3/2/26
Caitlin Baunsgard                                       Date
Assistant U.S. Attorney


I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement, and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____          3-2-26
AUGUSTIN DESHANE VALENTINE          Date
Defendant  Austin

PLEA AGREEMENT - 16

I have read the Plea Agreement and have discussed the contents of the Plea Agreement with Defendant. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in Defendant's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's plea of guilty.

_____     _3/2/26_____
Dustin Marcello                                            Date
Attorney for the Defendant

PLEA AGREEMENT - 17